Case 1:05-cv-00004-JBW-JMA   Document 24   Filed 04/04/2006   Page 1 of 18

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ JUN 15 2006 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ETHEL WALKER,

                Plaintiff,

-against-

CITY OF NEW YORK,
POLICE OFFICER JOHN DOE,
POLICE OFFICER JOHN ROE,
& POLICE OFFICER JOHN COE,

                Defendant.
------------------------------------------------------------X

**Report & Recommendation**
05-CV-0004 (JBW) (JMA)

*[Handwritten note: No objection having been made, the motion for enforcement is granted. Submit judgment promptly; close the case. So ordered. JMK 5/26/06]*

APPEARANCES:

Lise Hunter, Esq.
25 Washington Street, Suite 303
Brooklyn, New York 11201
*Attorney for Plaintiff*

David M. Hazan, Esq.
Concepcion A. Montoya, Esq.
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
*Attorneys for Defendants*

**AZRACK, United States Magistrate Judge**:

      This action arises under 28 U.S.C. §§ 1331, 1383 and 42 U.S.C. §§ 1983, 1988 for an alleged assault and false arrest of plaintiff, Ethel Walker ("Walker"), by members of the New York City Police Department ("Defendants") on September 6, 2004 (Dkt No. 1: Compl. ¶¶ 11-12 (01/03/05)). When Walker's attorney, Michael Colihan ("Colihan"), on two separate occasions entered into identical settlement agreements with defendants' counsel, David Hazan of New York City Corporation Counsel ("Hazan"), Walker objected and refused to execute the settlement documents.

Defendants now move to enforce the settlement agreement, and, for the reasons stated below, I respectfully recommend that defendants' motion be granted.

## BACKGROUND

According to plaintiff's pleadings, on September 6, 2004, plain-clothed police officers came onto Walker's property and "without just cause, approached, accosted, assaulted and arrested" plaintiff (Compl. ¶¶ 11-12). As a result, Walker alleges that she "suffered serious and severe personal & psychological injuries some of which . . . are permanent in nature" (Id. ¶ 13). Walker brought the present action against defendants on January 3, 2005 (Id. ¶¶ 1-2).

On December 6, 2005, while discovery was ongoing, counsel had a telephone conference with me. Colihan informed Hazan and the Court that Walker would settle the matter for $7,500.00, a sum that included all costs and fees. That same day, after the conclusion of the telephone conference, the parties orally settled the matter for $7,500.00 (Dkt No. 12: Letter from David M. Hazan to the Honorable Joan M. Azrack (12/07/05) at 1 ("12/07/05 Hazan Letter")). The parties immediately advised the Court that the matter had been settled, and I noted the settlement on the civil calendar for entry on the docket sheet (Dkt No. 11: Mins. (12/06/05) ("12/06/05 Mins.")).

The day after the settlement conference, I received a letter from Hazan notifying me that, after the parties reported to chambers that the case was settled, Colihan had called Hazan and told him that his client no longer wished to settle (12/07/05 Hazan Letter at 1). Hazan's letter requested that the court enforce the settlement (Id. at 3). That same day, I received a letter from Colihan, stating that Walker repudiated the settlement and arguing that the oral settlement was not binding because Walker had not ratified any document or release (Dkt No. 13: Letter from Michael Colihan

2

to the Honorable Joan M. Azrack (12/07/05) ("12/07/05 Colihan Letter")). In addition, Colihan notified the Court that his client was seeking new counsel (Id.).

I scheduled a telephone conference with the parties for December 14, 2005; however, the telephone conference never occurred because on that day, prior to the conference, plaintiff's counsel notified my chambers that Walker had agreed to enter into the $7,500.00 settlement. The conference was adjourned, and Hazan prepared the settlement paperwork and mailed it to Colihan that same day (Dkt. No. 17: Letter from David M. Hazan to the Honorable Joan M. Azrack (03/01/06) ("03/01/06 Hazan Letter")).

Almost two months later, on February 7, 2006, plaintiff filed a Notice of Appearance with the court indicating that Lise Hunter ("Hunter") would now appear on her behalf (Dkt No. 16: Notice of Appearance (02/07/06)). Subsequently, defendants filed a second motion to enforce the settlement (03/01/06 Hazan Letter at 2). On March 9, 2006, I held a conference with all the parties, which Walker attended, accompanied by both her new and old counsel (Dkt No. 19: Mins. (03/09/06)). Colihan requested that he be relieved as counsel and informed the Court that Hunter now represented Walker. Hunter reported to me that Walker did not wish to settle the matter for $7,500.00 and had never authorized Colihan to accept that amount, or any other, in settlement. At that point, I scheduled a hearing on defendants' motion to enforce the settlement.

At the hearing, on March 17, 2006, Colihan and Walker presented vastly different accounts of their communications relating to the settlement of this matter. According to Colihan he had discussed the weakness of her case with Walker early on and advised her that any settlement with defendants in excess of $5,000.00 would be favorable. Colihan testified that he and Walker discussed this settlement figure in mid-June, 2005 and that Walker indicated that anything in excess

3

of $5,000.00 would be an acceptable settlement amount. Armed with that authorization, Colihan entered into settlement negotiations with defendant and secured a $7,500.00 settlement for Walker. According to Colihan, when he called Walker immediately after the oral settlement agreement was reached on December 6, 2005, she told him that the amount was "not acceptable." Colihan testified that he reminded Walker that she had previously authorized any amount in excess of $5,000.00. He then reviewed the merits, weaknesses, and estimated value of the claim with Walker, and, when it was clear that he and plaintiff no longer agreed on any of those points, he advised plaintiff that she was free to seek other counsel. According to Colihan, Walker indicated that she would attempt to find new counsel.

Several days later Colihan and Walker again spoke over the telephone. In this communication, Walker told Colihan that the $7,500.00 amount was again acceptable to her. It was at this time that Colihan contacted Hazan, and together they notified my chambers, on December 14, 2005, that a further conference on the matter was unnecessary due to plaintiff's reaffirmation of the settlement amount. Shortly thereafter, Colihan called plaintiff to inquire if she had signed the settlement papers, and Walker again notified him that she was "no longer interested" in the settlement amount and was going to renew her search for replacement counsel. According to Colihan, he did not hear from plaintiff again and was unaware that she had successfully retained new counsel until he received an electronic notification that a Notice of Appearance had been filed with the Court.

Walker's testimony significantly differed from Colihan's. Initially, Walker testified that she and Colihan had not discussed settlement figures. She eventually conceded, however, that on two occasions they had discussed settlement but claimed that no figures or amounts were ever discussed.

4

She testified that she never talked with Colihan about a favorable settlement amount as being more than $5,000.00. According to Walker, the first time she learned that the case was settled was after a witness to the alleged assault, Rondu Williams ("Williams"), visited with Colihan, at plaintiff's suggestion, to aid in discovery. According to Walker, Colihan reportedly informed Williams that at Christmas his "stockings would be full." Confused by this statement, Walker testified that she called Colihan and was informed of the $7,500.00 settlement figure. Walker testified that, even then, she did not realize fully that the case had been settled for that amount, and merely thought it was an initial offer from defendants, which she told Colihan to reject. She testified that at no time did she approve of the amount and that all subsequent telephone conversations with Colihan regarded her ongoing search for new counsel. According to Walker, she was unaware that the case had actually been settled for $7,500.00 until she met with Hunter for the first time.

## DISCUSSION

### I.   Colihan's Authority to Enter into a Settlement Agreement

The instant matter involves a civil action for deprivation of rights under the United States Code; thus, "the scope of the agent's authority is determined according to federal precedent." United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 986 F.2d 15, 20 (2d Cir. 1993); see also Fennel v. TLB Kent Co., 865 F.2d 498, 501 (2d Cir. 1989). The Second Circuit has adopted, and frequently reaffirmed, the fundamental principal that the decision to settle a case rests with the client alone. Int'l Bhd., 986 F.2d at 19 (citing United States v. Beebe, 180 U.S. 343, 350-53 (1901)); Fennell, 865 F.2d at 501-02. While this principle is well established, "if an attorney has apparent authority to settle a case, and the opposing counsel has no

5

reason to doubt that authority, the settlement will be upheld." Fennell, 865 F.2d at 502 (citing Int'l Telemeter Corp. v. Teleprompter Corp., 592 F.2d 49, 55 (2d Cir. 1979)).

Defendants are not obligated to prove that Colihan had authority to bind plaintiff. Rather, the burden is on plaintiff to demonstrate that Colihan lacked the authority to settle the case. See Gilbert v. United States, 479 F.2d 1267, 1268-69 (2d Cir. 1973). See also Artha Mgmt., Inc. v. Sonia Holdings, Ltd., 91 F.3d 326, 329 (2d Cir. 1996) ("[A]ny party challenging an attorney's authority to settle the case . . . bears the burden of proving by affirmative evidence that the attorney lacked authority.") (emphasis added). The Second Circuit has qualified that burden as "not insubstantial." Int'l Bhd., 986 F.2d at 20 (citing Surety Ins. Co. of Cal. v. Williams, 729 F.2d 581, 583 (8th Cir. 1984) (holding that defendants "carry a heavy burden to establish that their attorney acted without any kind of authority . . . [and] in meeting that burden [they] may not rely on [ ] conclusory affidavit[s], but must establish through competent evidence that their attorney lacked actual, implied, or apparent authority . . . .")).

For the reasons stated below, I find that Colihan had actual authority to orally bind plaintiff to the terms of the settlement agreement. Once actual authority is established, it is unnecessary to examine whether there was apparent authority. However, in the interest of completeness, I find that Colihan had apparent authority to bind plaintiff, upon which defendants justifiably relied. See Thompson v. Rocco, No. 02-Civ-0635, 2004 WL 1277871, at *3 (S.D.N.Y. June 8, 2004).

**A.    Colihan Had Actual Authority to Bind Plaintiff to the Settlement**

As stated above, Walker has the burden or proving that Colihan, her attorney at the time, did not have authority to bind her to the settlement agreement. She has not met this burden. Walker's testimony at the hearing was wholly incredible; whereas Colihan's testimony was not only credible

but consistent with all the interactions and communications with the Court, between December 6, 2005 to the present.

I find that Colihan's testimony regarding settlement discussions with plaintiff was credible. He had a detailed recollection of his conversations with Walker about the possibility of settlement and the potential value of her claim. His testimony regarding Walker's reaction to the initial settlement agreement and subsequent reaffirmation of the amount are consistent with his representations to and communications with both Hazan and the Court. Furthermore, his account of Walker's mid-December acceptance of the $7,500.00 amount is consistent with his phone call to the Court adjourning the December 14, 2005 conference and with his failure to further advocate, as he did in his December 7, 2005 letter, that the oral, unexecuted settlement agreement did not bind his client.

By contrast, Walker's testimony and account of her discussions regarding settlement with Colihan are not credible. It is wholly unbelievable that, as Walker describes it, she would have two conversations with Colihan, discussing the possibility of settlement, and not once ask him at what amount he valued the case or for what amount he proposed settling it. In addition, I find her testimony regarding witness Rondu Williams' visit to Colihan's office to be confused and unreliable. It simply defies logic that Colihan would spend time interviewing Williams if he had already settled the case; furthermore, it makes even less sense that Colihan would tell Williams, who was not a party to the case, and thus would in no way financially benefit from the settlement, that his "stockings would be full." Moreover, Walker's purported chronology is not consistent with the Court record. If Colihan had already settled the case when he made the alleged comment to Williams, it is implausible that Walker learned of the "stockings" comment from Williams and

7

phoned Colihan so soon after Colihan and Hazan orally agreed to the settlement. That she believed the settlement figure to be merely an offer and not the final amount has no resonance of truth with this Court either. Walker offered no credible evidence that she had not vested Colihan with authorization to settle the matter for $7,500.00.

Thus, I find that Colihan had actual authority on December 6, 2005 and December 14, 2005 to bind plaintiff to the settlement amount of $7,500.00. See Artha Mgmt. 91 F.3d at 329; Foster v. City of New York, No. 96-Civ-9271, 2000 WL 145927, at **3-4 (S.D.N.Y. Feb. 7, 2000). If prior to December 6, 2005 plaintiff came to believe that her case was worth more than her previously authorized amount of more than $5,000.00, she was duty-bound to advise Colihan. Having failed to express such a view, she is bound by his representations. See Thompson, 2004 WL 1277871, at *3 (holding that "having authorized settlement at $50,000.00 and never having revoked those instructions before the offer was accepted, the plaintiff's change-of-heart comes too late."); Willgerodt v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Afterthought or change of mind are not sufficient to justify rejecting a settlement."); Foster, 2000 WL 145927, at *4 ("This Court must enforce a binding oral agreement, notwithstanding that plaintiff may have had a change of heart.").

Since it is clear that Colihan had actual authority to bind Walker to the settlement, the Court "need not [ ] determine whether [he] also had apparent authority." Thompson, 2004 WL 1277871, at *3. However, in the interest of completeness, I have considered whether Colihan had apparent authority as well. See Int'l Bhd., 986 F.2d at 20 (an attorney may have "both actual and apparent authority to settle" a matter).

8

### B.     Colihan Had Apparent Authority to Bind Plaintiff to the Settlement

Plaintiff also shoulders the burden of proving that Colihan did not have apparent authority. See Artha Mgmt. 91 F.3d at 330 (the burden is placed on the challenging party because of "the great likelihood [ ] that the client will have easier access to the evidence regarding its attorney's authority . . . ."). "Apparent authority is 'the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Int'l Bhd., 986 F.2d at 20 (citing Restatement (Second) of Agency § 8 (1958)). If "opposing counsel has no reason to doubt that authority, the settlement will be upheld." Fennell, 865 F.2d at 502.

"[B]ecause of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, we presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." Artha Mgmt., 91 F.3d at 329. Colihan testified at the hearing that Walker retained him in September 2004 and that he subsequently prepared, signed and filed a Notice of Claim on plaintiff's behalf. He prepared, signed and filed the Complaint with this Court. In addition, he appeared with Walker at a deposition and at all conferences before this Court. Also, he signed all correspondence to defendants and to this Court. Finally, Hunter did not file a Notice of Appearance until two months after the settlement agreement was confirmed for the second time. Because Walker conceded all of the above facts at the hearing, and because of the presumption in the Second Circuit that the attorney-of-record has authority to settle a case, Colihan had apparent authority to do so.

Defendants were both subjectively and objectively reasonable in their reliance on Colihan's representation that he had authorization to settle the matter for $7,500.00. See Marchese v. Sec'y,

9

United States Dep't of Interior, No. Civ-03-3082, 2006 WL 47461, at *8 (E.D. La. Jan. 9, 2006). See also Restatement (Second) of Agency § 27 (2005). Thus, I find that plaintiff has failed to meet her burden to disprove that Colihan had apparent authority. Defendants were therefore reasonable in their reliance on Colihan's authority.

## II.    The Parties Intended that the Oral Settlement Agreement Bind Them

When Walker first repudiated the settlement on December 6, 2005, Colihan wrote a letter to this Court, asserting that "since Ms. Walker has signed no document or release ratifying the settlement, there is nothing to enforce" (12/07/05 Colihan Letter). Since then, Hunter, plaintiff's new counsel, has failed to raise this issue in a reply brief, letter, or at the March 17, 2006 hearing. It appears that plaintiff is relying merely on the strength of her argument that Colihan had neither actual nor apparent authority. However, even if plaintiff continued to assert this argument, the settlement should nevertheless be enforced, as the analysis below will show that the parties intended to be bound by the oral settlement.

It is not only in this Court's power to enforce "summarily, on motion, a settlement agreement reached in a case that was pending before it," but it is this Court's duty to "enforce a settlement agreement which it ha[s] approved . . . ." Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974) (emphasis added). See also Haitian Ctrs. Council, Inc. v. Sale, 817 F. Supp. 336, 337 (E.D.N.Y. 1993) ("A district court may exercise its inherent power to protect the parties appearing before it, to preserve the integrity of an action, to maintain its ability to render a final judgment and to ensure the administration of justice."). "Under common law principles adopted by the federal courts, parties are free to enter into settlement without memorializing their agreement in a fully executed document, and such agreements are as enforceable as any other oral contract."

10

Foster, 2000 WL 145927, at *3 (citing Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80-83 (2d Cir. 1986)).

In Winston, the Second Circuit created a four pronged test to determine whether parties, who orally agree to settle a matter but fail to fully execute documents to that end, intend to be bound by those oral representations. Winston, 777 F.2d at 80. The Second Circuit determined that the test for intent was not an "after-the-fact professed intent, but the parties' intent as expressed in their words and deeds at the time.... '[A] court must look, not to their after-the-fact professed subjective intent, but their objective intent as manifested by their expressed words and deeds at the time.'" Hostcentric Tech., Inc. v. Republic Thunderbolt, LLC, No. 04-Civ-1621, 2005 WL 1377853, at *6 (S.D.N.Y. June 9, 2005) (citing Grupo Sistemas Integrales de Telecomunicacion S.A. de C.V. v. AT & T Commc'n, Inc., No. 92-Civ-7862, 1994 WL 463014, at *3 (S.D.N.Y. Aug. 24, 1994) (emphasis added) (internal quotations omitted)).

The first prong a court must consider under Winston is whether "either party communicate[d] an intent not to be bound until he achieve[d] a fully executed document." Winston, 777 F.2d at 80. Such communication must be an "express reservation of the right not to be bound in the absence of a writing." Id. The second prong is "whether there has been partial performance of the contract." Id. The third prong is "whether all the terms of the alleged contract have been agreed upon. Id. Lastly, the fourth consideration is "whether the agreement at issue is the type of contract that is usually committed to writing." Id. "No single factor is decisive, but each provides significant guidance." Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 323 (2d Cir. 1997). The court must carefully weigh these four factors, first, to ascertain whether the parties intended to be bound and, second, to ward off a party's attempt to rewrite the history of a case or manipulate the opposing

11

party. "[T]he Court must be careful to guard against the possibility that parties will seek to manipulate settlements to gain strategic advantage, settling and unsettling litigation to suit their immediate purposes." Media Group, Inc. v. HSN Direct Int'l, Ltd., 202 F.R.D. 110, 112 (S.D.N.Y. 2001) (internal quotations omitted).

### A.     Express Reservation Not to Be Bound

Although Winston is a balancing test, the first prong, an express reservation not to be bound, is perhaps one factor with the power to tip the scales slightly more than the other three.

> The first factor, the parties' objectively-expressed intent, is the most important: The Second Circuit has at various times stated that no single factor is decisive, but each provides significant guidance. But the Second Circuit has also stated, in the context of a binding preliminary commitment, that the first factor is the most important.

Hostcentric, 2005 WL 1377853, at *7 (internal quotations omitted) (citing Krauth v. Executive Telecard, Ltd., 890 F. Supp. 269, 293 (S.D.N.Y. 1995) (citations omitted)).

"Winston stands for the proposition that 'if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract.'" Artha Mgmt., 91 F.3d at 329 (citing Winston, 777 F.2d at 80). Plaintiff fails to satisfy this prong "because [she] ha[s] produced no evidence that [Colihan] 'communicate[d] an intent not to be bound.'" Artha Mgmt., 91 F.3d at 329 (holding that the challenging party must provide "clear evidence" of an intent not to be bound). See also Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72 (2d Cir. 1989) ("references to the possibility that negotiations might fail and the reference to a binding sales agreement to be completed at some future date" evinced an intent not to be bound).

In Hostcentric, the parties informed the district judge in writing that they were "pleased to advise the court that this action has been settled," and noted that the parties were preparing

12

paperwork. 2005 WL 1377853, at *2, *7. Because there were no references to a "proposed settlement" or "proposed stipulations of settlement" and because "both parties referred to there being a conclusive settlement" the court held that the parties evinced an intent to be bound. Id. at *7, *10. See also Vari-O-Matic Mach. Corp. v. New York Sewing Mach. Attachment Corp., 629 F. Supp. 257, 258-9 (S.D.N.Y. 1986) ("since both parties made representations to the court that agreement had been reached, there can be no factual dispute that a settlement had been consummated"). The outcomes of Hostcentric and Vari-O-Matic are applicable to this case. During both the December 6, 2005 and the December 14, 2005 telephone conversations with chambers, the parties indicated that a complete and final settlement had been reached. Hazan agreed to prepare the settlement papers and did so on December 14, 2005. Thus, on this weighty Winston factor, plaintiff has failed to provide an iota of evidence that there was an express reservation of the right not to be bound in the absence of a signed writing. The actions of all the parties in communicating the settlement to the Court evinced an intent to be bound.

### B.     Partial Performance

If the first of the Winston factors has the power to tip the scales slightly more than the other four, it is this second factor that appears to have had the least sway with courts. Here there is no evidence indicating that there was partial performance, since no money exchanged hands. In Conway v. Brooklyn Union Gas Co., the court held that there was partial performance because "neither party resumed active litigation relating to the instant case." 236 F. Supp. 2d 241, 250 (E.D.N.Y. 2002) (citing Alvarez v. City of New York, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001) (finding that while instructive on the element of partial performance, the party's decision not to resume active litigation during settlement discussions did not "weigh for or against enforcing the

contract"). Accordingly, while neither party pursued the litigation for two months, nor did plaintiff's counsel-of-record, Colihan, pursue his arguments to the Court regarding the lack of enforceability of the oral settlement agreement, this factor does not appear to hinder nor help plaintiff's claim that the oral settlement is not binding.

### C. Whether all the Terms of the Alleged Contract Have Been Agreed Upon

In Winston, the court carefully dissected the terms of the agreement, particularly those that were negotiated after the settlement was arguably finalized. The parties in Winston had several points of disagreement during the drafting process and cycled through a number of drafts. Winston, 777 F.2d at 79-80. The court held that where "counsel insist on continually redrafting the specific terms of the proposed agreement, the changes made must be deemed important enough to the parties to have delayed final execution and consummation of the agreement." Id. at 82-83. Again, the facts of this case are distinguishable from the facts of Winston; thus, this Court finds that the outcome in Winston with respect to this third prong is antithetical to the required outcome in this matter. Plaintiff did not argue in the December 7, 2005 letter that the terms of the alleged contract were not those orally agreed upon. On two separate occasions, Colihan, acting with actual and apparent authority, accepted the exact same settlement amount, $7,500.00. Other than the standard releases, there were no other additional terms or complications to the verbal settlement in the agreement defendants now seek to enforce. Notably, plaintiff does not assert that the oral settlement was for a different amount. See Gildea v. Design Distrib., Inc., 378 F. Supp. 2d 158, 161 ("The single most important term of the agreement, the settlement amount, is precisely what is presently in dispute."). Thus, the third prong of the Winston test is satisfied, as the settlement agreement twice reported to

14

the court remained consistent, and plaintiff has never argued that the settlement amount agreed to was different than the one defendants now seek to enforce.

### D. Whether the Agreement at Issue is the Type of Contract Usually Committed to Writing

The final factor of the Winston test is "whether the agreement at issue [ ] was the type of contract that was usually put in writing." Winston, 777 F.2d at 83. This factor requires an evaluation of the "complexity of the transaction." Id. Since the contract in Winston would have required a payment over several years based on a percentage of earnings, and because the complexity of the agreement required several drafts, the court determined that the contract was of a nature that must be set in writing. Id. See also Ciaramella, 131 F.3d at 326 (agreement contained numerous provisions that would apply into perpetuity).

In addition, Winston "would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written." Hostcentric, 2005 WL 1377853, at *9 (holding that the settlement was enforceable because the party challenging the settlement agreement had presented "no evidence that a simple lease termination [was] complex" and because the agreement would last "only the short time necessary for payment and removal of property, not for a lengthy time into the future"). The settlement agreement in this case was for one lump-sum of $7,500.00. There was nothing complex about this agreement. Plaintiff has failed to provide any evidence that this facially straight-forward lump-sum settlement had any underlying complexity.

It should be noted that some courts have considered an oral settlement agreement that was drafted and transmitted between parties to qualify as an actual writing; thus nullifying the need for the four prong Winston balancing test. In Conway, the court found it noteworthy that a "written

draft of the settlement had essentially been finalized . . . [since] [t]he terms . . . were substantially complete and largely reduced to writing." Conway, 236 F. Supp. 2d at 251 (internal quotations omitted). See also Mone v. Park E. Sports Med. & Rehab., No. 99-Civ-4990, 2001 WL 1518263, at *3 (S.D.N.Y. Nov. 29, 2001) (settlement agreement enforceable because "committed to writing in [a] complete and formal draft . . ."). In addition, plaintiff's failure to sign the settlement agreement does not invalidate the binding nature of the oral settlement or lessen the significance of the written memorialization of the terms. See Alipio v. Sec'y of Army, No. C-94-0224, 1998 WL 231021, at *3 (N.D. Cal. 1998) (enforcing an oral settlement agreement despite plaintiff's refusal to sign the stipulation because the "[plaintiff's] mistaken belief [that a further writing was required to finalize the agreement settling his lawsuit] d[id] not invalidate the oral agreement which he had already made before the magistrate judge.") (citing Harrop v. W. Airlines, Inc., 550 F.2d 1143, 1144-45 (9th Cir. 1977)).    Thus, applying the Winston criteria, I find that the parties intended to be bound by their oral representations at the December 6, 2005 settlement conference.

### E.    Fundamental Fairness

In addition to upholding the settlement agreement based on the four Winston factors, the Court should uphold the settlement agreement based upon fundamental fairness, a fifth factor considered by my respected colleague, Magistrate Judge Levy in Conway v. Brooklyn Union Gas Co. and adopted by Judge Nina Gershon. In Conway, Judge Levy stated that:

> [a]lthough [fairness] is not ordinarily a factor that courts consider in deciding whether or not to enforce an oral settlement agreement, I am obliged to note that this court is intimately familiar with the settlement, having worked closely with the parties to settle this case, and I believe that the terms to which they agreed are eminently fair and reasonable.

16

Conway, 236 F. Supp. 2d at 252. This Court played a hands-on role in the settlement negotiations in this case and was involved in all of the open-court discussions. I believe the terms of the settlement are fair and reasonable to all the parties and, at the March 9, 2006 conference, urged Walker to reconsider her disavowal of the settlement agreement. If the terms had been unfair or inequitable, I would not have urged the parties to settle this matter during the December 6, 2005 telephone settlement conference. Instead, I would have encouraged further settlement talks and conferences that the Court would facilitate.

## CONCLUSION

There is a "public interest in promoting settlement of lawsuits..." and the "courts [ ] have a responsibility to promote settlements . . . ." Janus Films, Inc. v. Miller, 801 F.2d 578, 584 (2d Cir. 1986). Because Colihan had apparent and actual authority to bind plaintiff and because both parties intended to be bound by the oral settlement agreement reported to the Court, the settlement agreement is valid and binding. Finally, a party may be relieved from a binding settlement agreement "only when there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident." Willgerodt, 953 F. Supp. at 560 (internal quotations omitted). None of these causes exist here, and, thus, there is no justification for denying the enforceability of the settlement. Because the parties clearly evinced an intent to be bound by their oral representations to the Court, under the four prongs of Winston and the additional consideration of fairness under Conway, and because this Court has a duty to enforce settlement agreements, oral or written, where the parties intended to be bound, I respectfully recommend that the District Court enforce the settlement agreement entered into on December 6, 2005 and reaffirmed on December 14, 2005.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1) (2000); Fed. R. Civ. P. 72, 6(a), 6(e).

**SO ORDERED.**

Dated: Brooklyn, New York
April 4, 2006

                                           /s/
                                       JOAN M. AZRACK
                                       UNITED STATES MAGISTRATE JUDGE